**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | |
|---|---|
| IN RE: ) | Case No. 21-20111 (JJT) |
| ) | |
| OLD CP, INC., and SURI REALTY, LLC, ) | |
| ) | Chapter 7 |
| Debtors. ) | |
| ) | |
| OLD CP, INC., ) | |
| ) | Adv. Pro. Case No. 23-02020 (JJT) |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Re: ECF Nos. 21, 24, 29, 30 |
| NOVO ADVISORS, LLC, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF DECISION AND RULING**
**ON NOVO ADVISORS, LLC'S MOTION TO DISMISS**

Before the Court is a Motion to Dismiss Plaintiff's Complaint ("Motion"), and accompanying Memorandum of Law, filed by Novo Advisors, LLC ("Defendant"). (ECF Nos. 21, 24). Plaintiff–Debtor Old CP, Inc., formerly known as Carla's Pasta, Inc., ("CPI" or "Plaintiff" or "Debtor") filed a Memorandum of Law in Opposition to the Motion (ECF No. 29), to which Defendant filed a Reply Memorandum. (ECF No. 30). Defendant argues in the Motion that this Adversary Proceeding, commenced by the Plaintiff via the Complaint (ECF No. 1) ("Complaint") on December 22, 2023, must be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), as made applicable to this proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure. Specifically, Defendant contends that: (1) Plaintiff's claims are barred by the doctrines of judicial and equitable estoppel; (2) Plaintiff affirmatively

waived and released the alleged conflicts and issues underpinning its claims; and (3) Plaintiff failed to state a claim under any of the asserted theories. The Court held a hearing for oral arguments on June 28, 2024, after which the Court took the matter under advisement. The Court assumes the parties' familiarity with the factual and legal allegations made with the Motion but will address cognizable material facts as necessary. For the reasons that follow, Defendant's Motion is DENIED.

I. **JURISDICTION**

The United States District Court for the District of Connecticut (the "District Court") has jurisdiction over the instant proceedings under 28 U.S.C. § 1334(b), and the Court derives its authority to hear and determine this matter on reference from the District Court under 28 U.S.C. § 157(a), (b)(1), and the General Order of Reference of the District Court dated September 21, 1984. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (F).

II. **STANDARD OF REVIEW**

"To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Iqbal*, 556 U.S. at 679. A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

at 679. The Movant bears the burden of proof on a motion to dismiss under FRCP Rule 12(b)(6). *Feldheim v. Fin. Recovery Serv., Inc.*, 257 F.Supp.3d 361, 365 (S.D.N.Y. 2017).

### III.  DISCUSSION[1]

Before addressing the factual sufficiency of the Complaint, the Court first addresses the Defendant's affirmative defenses under the related doctrines of estoppel and waiver.

    *a. Estoppel*

The Defendant contends that the entirety of the Complaint should be dismissed as the Plaintiff should be estopped to raise any alleged conflict of interest arising from Novo's previous representation of an adverse entity as there were: (1) previous representations of the Debtor contrary to its current interests arising from that induced Novo to act, to its detriment, in reliance on those representations (equitable estoppel); and (2) previous, allegedly inconsistent, positions successfully asserted by the Debtor in a judicial proceeding (judicial estoppel). *See* 28 Am. Jur. 2d *Estoppel and Waiver* §§ 4, 27, 67 (2024) (discussing estoppel generally and defining equitable estoppel and judicial estoppel, respectively); *see also New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (discussing the elements of judicial estoppel).

Plaintiff provides two responses to both doctrines. First, Plaintiff contends that estoppel is an affirmative defense that is not properly considered by the Court in a Motion to Dismiss under FRCP 12(b)(6). Second, in the alternative, Plaintiff asserts that the Defendant's Motion fails to articulate specific facts that support the notion that estoppel warrants dismissal of any or all of the counts in the Complaint.

---

[1] The analysis contained in this section assumes that all Plaintiff's asserted facts are true. Nothing herein should be interpreted as a finding of fact for the purposes of trial. All capitalized terms not defined herein have the meaning attributed to them in the Complaint.

First, consideration of whether to invoke the doctrine of estoppel in a proceeding on a motion to dismiss is left to the sound discretion of the court. *New Hampshire*, 532 U.S. at 750; *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999); *Middlesex Mut. Assur. Co. v. Walsh*, 218 Conn. 681, 699, 590 A.2d 957, 967 (1991).

Second, "any claim of estoppel is predicated on proof of two essential elements: the party against whom the estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury." *Middlesex*, 218 Conn. at 699, 590 A.2d at 967 (cleaned up); *see also Vasily v. MONY Life Ins. Co. of Am.*, 104 F.Supp.3d 207, 216 (D. Conn. 2015). "It is the burden of the party asserting a claim of estoppel to establish the existence of the elements essential to an estoppel." *Middlesex*, 218 Conn. at 699, 590 A.2d at 967 (citation omitted). "[W]hether that burden has been satisfied in a particular case is an issue of fact." *Id*. (citation omitted). In this instance, such facts may be outside the parameters of the Motion to Dismiss.

Courts generally only invoke estoppel sparingly and to prevent injustice. 28 Am. Jur. 2d *Estoppel and Waiver* § 3 (2024); *see also New Hampshire*, 532 U.S. at 750 ("Judicial estoppel is a doctrine intended to prevent the perversion of the judicial process" (citation omitted)). Estoppel is also subject to large variations in its elements and applicability across and within jurisdictions. *See, e.g., New Hampshire*, 532 U.S. at 750 ("The circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of the principle" (citation omitted)); *Heckler v. Cmty. Health Servs. of Crawford Cnty. Inc.*, 467 U.S. 51, 59 (1984) ("[A] hallmark of the doctrine is its flexible application" (quoting Restatement (Second) of Torts § 894(1) (1979))). A guiding tenet, however, is that courts should rely on the

notion "that a party who takes a position that the other party relies and acts upon should not be permitted to take a contrary position in litigation to the detriment of the other party who acted in good-faith reliance on the earlier position." 28 Am. Jur. 2d *Estoppel and Waiver* § 2 (2024); *see also Intellivision v. Microsoft Corp.*, 484 F.App'x 616, 619 (2d Cir. 2012) ("'[C]ourts have uniformly recognized' that the purpose of the doctrine 'is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment'" (quoting *New Hampshire*, 532 U.S. at 749–50)).

Despite the large variations in the interpretation of these doctrines across—and often within—jurisdictions, the Court is given little direction by the Defendant as to precisely which counts each theory of its defenses would apply to. *See Middlesex*, 218 Conn. at 699, 590 A.2d at 967 (the burden of proving the elements of estoppel rests on the movant). Instead, the Defendant seems to focus on whether the theories allow the provisions of certain documents to serve, in combination, as a blanket impediment to all of Plaintiff's claims. With the understanding that the benchmark of an estoppel analysis is to prevent injustice—and with a particular eye to the flexible application of the doctrine—this Court takes a broad view of its elements and does not limit itself, unless a specific argument requires it, to the more circumscribed subtypes described by Defendant. This Court will therefore assess whether the Plaintiff represented or acted in a way calculated or intended to induce the Defendant to believe that certain facts existed, and that the Defendant relied on those actions or representations to its detriment. *See Heckler*, 467 U.S. at 59; *Middlesex*, 218 Conn. at 699, 590 A.2d at 967. In performing this assessment, the Court looks to the Complaint, its attachments, and the documents explicitly referenced in the Complaint.

In making its estoppel claims, the Defendant relies primarily on three documents: (1) an engagement letter, dated August 7, 2020, delineating the terms of Novo's retention by the

Plaintiff (Complaint, Exh. C) (the "Engagement Letter"); (2) a forbearance agreement, dated November 1, 2020, between the Plaintiff and a creditor, BMO Harris Bank, N.A. ("BMO"), delineating terms, waivers, and releases between the parties (Motion, Exh. 1) (the "Forbearance Agreement"); and (3) the Plaintiff's Application to Employ Novo Advisors, LLC as Financial Advisor and [Chief Restructuring Officer ("CRO")] to the Debtors, filed on February 16, 2021 in the underlying bankruptcy case (Lead Case No. 21-20111, ECF No. 123) (the "Application to Employ").  The Court addresses the material representations made in each document in turn.

In the Engagement Letter, the Defendant relies on the following language: "[CPI] acknowledges that Novo previously represented the senior secured lender(s) [BMO] of CPI, and agrees to waive all previous conflicts related to the prior lender engagement between Novo and the lender(s)." (Engagement Letter, 3). The Court notes, however, that this agreement is limited by its very terms to *previous conflicts* arising out of Novo's *prior* engagement with BMO. This release would not cover any ongoing conflict alleged by the Complaint under either theory of estoppel. (Complaint, ¶ 59). Similarly, this provision does not reasonably articulate a clear intent to release Novo from its fundamental fiduciary duties to CPI as a company officer—to the extent it is even enforceable to release a company officer from, in particular, its duty of loyalty. *In re Bernard*, 87 F.2d 705, 706–07 (2d Cir. 1937) (holding that directors and officers are fiduciaries); *see* Lucian Arye Bebchuk & Assaf Hamdani, *Optimal Defaults for Corporate Law Evolution*, 96 NW. U. L. Rev. 489, 496 n. 16 (2002) ("Some aspects of corporate governance are regulated in a mandatory fashion . . . Two prominent examples are insider trading and the duty of loyalty of corporate directors"); Joel Seligman, *The New Corporate Law*, 59 Brook. L. Rev. 1, 3 (1993) ("The duty of loyalty is the most important fiduciary duty of corporate officers and directors"); *see generally* Gabriel Rauterberg & Eric Talley, *Contracting Out of the Fiduciary Duty of*

*Loyalty*, 117 Colum. L. Rev. 1075 (2017) (noting that the duty of loyalty, while subject to limited corporate opportunity waivers, remains one of the few mandatory rules of corporate law). Furthermore, this release would not necessarily estop the Plaintiff from asserting the other various alternative theories of any of the counts alleged in the Complaint, particularly when viewed in combination with the Forbearance Agreement. The Court therefore cannot conclude, in the context of this Motion, that this language could be reasonably interpreted to release Novo from the misconduct alleged in the Complaint. Assuming the Court should review these documents, the Defendant has failed, at this stage and upon this record, to meet its burden of proving the essential elements of estoppel.

As a preliminary concern regarding the Forbearance Agreement, the Plaintiff has objected to the Court's consideration of this document, arguing it is beyond the scope of the Motion to Dismiss. On a motion to dismiss, however, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002), *overruled by Meyer v. Seidel*, 89 F.4th 117, 134 (2d. Cir. 2023)). "[M]ere notice or possession is not enough;" a necessary prerequisite to a court's consideration of a document in the Motion to Dismiss is the plaintiff's reliance on the terms and effect of that document in its Complaint. *Meyer*, 89 F.4th at 134 (clarifying and limiting *Chambers* to documents explicitly relied upon in the complaint). Here, the Plaintiff references and relies on the terms and effect of the Forbearance Agreement in the Complaint. (*See, e.g.,* Complaint, ¶¶ 26, 72). The Forbearance Agreement is therefore within the proper ambit of the Motion and the Court will examine its terms.

7

In the Forbearance Agreement, the Defendant relies primarily on the language of the releases provided for in Paragraph 9.[2] Neither party contends that Novo did not owe fiduciary duties to the Plaintiff as an officer of the company. Both parties agree that the provisions of Paragraph 9, if they release Novo at all, would release Novo only as an agent of BMO. Plaintiff argues that reliance on this section may constitute an admission by the Defendant that Novo owed fiduciary duties to both CPI and BMO simultaneously, creating an unwaivable conflict of interest.[3] Defendant argues that these releases are retroactive, looking back at Novo's previous engagement as an agent of BMO that would be covered by the releases; the fiduciary duties owed to each party would therefore be temporally separated and create no conflict.

The Forbearance Agreement is not clear in its terms as to whether Novo is to be considered an agent of BMO for the purpose of those releases at any time, even retroactively. This assessment is supported by the fact that the various duties, limitations, authorizations, payment terms, and other stipulations related specifically to Novo and the CRO are delineated elsewhere in the document. (*See, e.g.,* Forbearance Agreement, ¶¶ 7.8, 8.2). The releases under Paragraph 9 therefore do not seem calculated or intended to induce Novo to perform any of the acts alleged in the Complaint, nor does it appear that these provisions induced Novo to act as CPI's CRO or to enact the transfers complained of. Indeed, Novo had already been engaged as the Debtor's CRO for several months prior to this agreement. To that extent, these provisions do

---

[2] The relevant provisions of that section provide: "[CPI] hereby forever, fully, unconditionally, and irrevocably waives, and releases [BMO and its] . . . employees, attorneys, and agents (collectively, the "Releasees") . . . from any and all claims, liabilities, obligations, debts, causes of action . . ., defenses, counterclaims, and setoffs, of any kind, whether known or unknown, liquidated or unliquidated, matured or unmatured, fixed or contingent, directly or indirectly arising out of, in connection with, resulting from or related to any act or omission by [BMO] or any other Releasees with respect to the Loans, the Loan Documents and/or any Collateral."

[3] The "[Connecticut] Supreme Court has explicitly recognized that agents, as well as certain other categories of actors, 'are per se fiduciaries by nature of the functions they perform.'" *Jolen, Inc. v. Brodie and Stone, PLC*, 186 Conn.App. 516, 523, 200 A.3d 742, 745–46 (Conn. App. Ct. 2018) (quoting *Iacurci v. Sax*, 313 Conn. 786, 800, 99 A.3d 1145, 1154 (2014)).

not seem inconsistent with the Plaintiff's allegations in the Complaint and the Court finds, at this stage and upon this record, that the Defendant has failed to meet its burden. The Court declines to rule, in this context, on whether the releases for an agent are temporally limited and whether these representations to the Court regarding conflicting fiduciary duties constitute an admission by the Defendant. Such findings are not appropriate on a motion to dismiss, especially where all counts in the Complaint are supported by other, independently sufficient factual grounds.

Defendant additionally contends that the Forbearance Agreement was adopted by the Court in the Final DIP Order (Lead Case No. 21-20111, ECF No. 189, March 1, 2021) ("DIP Order"), therefore barring the Plaintiff's claims as covered by the doctrine of judicial estoppel. To the contrary, that order merely acknowledged a stipulation by the Debtor and BMO that they were parties to, among other agreements, the Forbearance Agreement. The Court did not affirmatively make its own determination in the DIP Order regarding those provisions or their adoption. (DIP Order, § D). The Court's acceptance of a stipulation between the parties does not rise to the level of acceptance necessary in this jurisdiction to constitute judicial estoppel. *See Bates v. Long Island R. Co.*, 997 F.2d 1028, 1037 (2d Cir. 1993) ("A settlement neither requires nor implies any judicial endorsement of either party's claims or theories, and thus a settlement does not provide the prior success necessary for judicial estoppel" (cleaned up)). Additionally, the releases to BMO's agents in the DIP Order are vague for the same reason as the releases in the Forbearance Agreement.[4] This defensive argument therefore suffers from the same infirmities that plague the Forbearance Agreement in that it is similarly unclear as to whether Novo was included in the releases of BMO's agents. As a result, the Court finds that the

---

[4] "[T]he Debtor[] . . . waive[s] and release[s] any and all causes of action and claims against [BMO] and their agents, representatives, assigns, and successors." (DIP Order, § D.ii).

Defendant, at this stage and upon this record, has failed to meet its burden regarding judicial estoppel.

Finally, the Defendant contends that the Plaintiff made prior representations to the Court regarding the qualifications and disinterestedness of Novo, giving rise to an independent claim of judicial estoppel. In support of this, Defendant points to Plaintiff's Application to Employ, particularly a section that acknowledges the payments made to Novo through BMO. Plaintiff correctly points out, however, that this application was withdrawn two weeks later, before the Court had occasion to hear arguments or rule on the application. (Lead Case No. 21-20111, Withdrawal notice, ECF No. 193, March 1, 2021). The Debtor then immediately filed an application to employ another entity as financial advisor and CRO. (Lead Case No. 21-20111, Application to Employ Phoenix Executive Services, LLC as Financial Advisor and CRO, ECF No. 194, March 1, 2021). The Application to Employ was also submitted after Novo had already received payments for its services. Under these facts, it is difficult to see how the Defendant relied on those representations to its detriment. Such a transient representation, on which neither the Court nor Novo relied, does not sufficiently impugn the integrity of the judicial process to warrant the dismissal of the Complaint. *See Intellivision*, 484 F.App'x at 619. The Court therefore finds, at this stage and upon this record, that the Defendant has failed to meet its burden.

Although issues of contract interpretation using sources beyond the documents referenced in the Complaint may be properly brought again at a later stage in this case, the Court finds that the Defendant has failed to meet its burden regarding its various estoppel claims in this Motion to Dismiss.

*b. Waiver*

The Defendant again summarily contends that Plaintiff waived all claims contained within the Complaint. In support of this, the Defendant again points to the provisions of the Engagement Letter, the Forbearance Agreement, the DIP Order, and, additionally, the arguments made by BMO in a Limited Objection filed in the underlying bankruptcy case (Lead Case No. 21-20111, ECF No. 1427) ("Limited Objection").

"Waiver is the intentional relinquishment or abandonment of a known right or privilege." *C.R. Klewin Northeast, LLC v. City of Bridgeport*, 282 Conn. 54, 87, 919 A.2d 1002, 1023 (Conn. 2007) (cleaned up). When a waiver is contained in a contract:

> [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms.

*Sutherland v. Sutherland*, 107 Conn.App. 1, 5–6, 944 A.2d 395, 398–399 (Conn. App. Ct. 2008) (citation omitted). "[W]aiver may be inferred from the circumstances if it is reasonable to do so." *C.R. Klewin Northeast, LLC*, 282 Conn. at 87, 919 A.2d at 1023. (cleaned up). Determining whether waiver applies "is a question of fact." *AFSCME, Local 704 v. Dept. of Pub. Health*, 272 Conn. 617, 622, 866 A.2d 582, 585 (Conn. 2005).

The Court again notes that the terms of the Engagement Letter, the Forbearance Agreement, and the DIP Order are unclear as to their scope, intent, and the application of the respective waivers such that it is difficult to reasonably conclude that Novo was an intended beneficiary. As the Limited Objection explicitly relies on the language of the Engagement Letter, the Forbearance Agreement, and the DIP Order as well, the inclusion of these documents as indicative of a waiver is similarly misplaced.

    c. *Missing the Forest for the Trees*

There is a more serious set of issues, that neither party addresses, but that arise when examining the entire tapestry of Novo's engagements with both BMO and CPI in the broader context of these estoppel and waiver arguments. This Court addresses these issues because they demonstrate additional reasons, independent of the parties' arguments, as to why the Court declines to address the arguments of estoppel and waiver as part of the Motion.

The Forbearance Agreement provides that CPI "agrees to pay all reasonable costs, fees, and expenses of [BMO], expended or incurred . . . in connection with the negotiation, preparation, administration, and enforcement of this Agreement, the Loan Documents, the Obligations, [and] any of the Collateral . . ." (Forbearance Agreement, ¶ 13.14). Defendant contends that, unequivocally, Novo's fees, accrued under its prior engagement with BMO, are covered by this provision. The terms of Paragraph 13.14 may therefore imply that Novo could recover its as-yet unpaid fees for its prior engagement with BMO *solely from CPI*. Interestingly, under the representations advanced about the meaning of these various provisions, this may create a situation where Novo held an antecedent, non-administrative claim against CPI before and while simultaneously acting as its CRO.

Beyond that, there are additional issues that arise when examining the interplay between all of these documents. Defendant contends that Novo was intended to be the recipient of the agent releases provided for in the Forbearance Agreement. (Forbearance Agreement, ¶ 9). Novo was serving as CPI's CRO at the time the Forbearance Agreement was being negotiated and, by implication of its duties under the Engagement Letter, was participating in those negotiations.[5]

---

[5] Under the Engagement Letter, Novo was also to "[p]articipate in all Board meetings and meetings with [CPI's] secured lenders." (Engagement Letter, 2). Similarly, Novo was further authorized to negotiate with CPI's secured lenders and other interested parties on CPI's behalf. (Engagement Letter, 3). It was also authorized to "fully,

12

This implies that Novo was standing on both sides of the transaction; Novo was serving as an officer and fiduciary to CPI at the same time that CPI was negotiating a loan modification with an adverse entity to pay, inter alia, unpaid fees independently owed to Novo for services it performed for that very adverse entity.

Succinctly, if the estoppel provisions have the meaning that Defendant ascribes to them, then this raises the very real inference that Defendant was using the auspices of the insolvent Debtor, while serving as its CRO, to cause it to incur additional debt to pay Novo the unpaid fees for services performed while acting as a fiduciary of BMO. This also gives rise to the related inference that Novo was actually the originator or negotiator, on the Plaintiff's behalf, of the very releases and payment terms from which it benefited and with which it is now attempting to estop the Plaintiff. This would be a clear violation of—at the very least—Novo's irrefutable duty of loyalty as a company officer under longstanding precedent. *See Bernard*, 87 F.2d at 706–07.

It strikes the Court as peculiar that this would be the Defendant's fair and reasonable interpretation of these agreements. While the Court declines to rule on these issues, at this time, it cautions the parties as to the potential implications of their troubling estoppel and waiver arguments.

   d.  *The Factual Sufficiency of the Complaint*

Finally, Defendant additionally contends that all counts of the Complaint lack the factual sufficiency to survive the Motion to Dismiss under FRCP 12(b)(6). Plaintiff argues that the Complaint points to specific transactions, payments, payment dates, contracts, communications, and timeframes, and that these facts are sufficient as to all counts. The Court agrees. Those factual allegations, if true, provide sufficient proof that Novo, beholden to two masters and itself,

---

independently, and directly communicate with [BMO] from time to time in performing the services" of CRO. (Engagement Letter, 4).

engaged in complex self-serving conduct to the detriment of the Debtor on the eve of bankruptcy. These factual allegations, if true, plausibly entitle the Plaintiff to relief.

## IV.     CONCLUSION

For the reasons set forth above, this Court finds the that the granting of Defendant's Motion is unwarranted as the Plaintiff has adequately pled facts sufficient to set forth a claim for relief. Accordingly, the Motion is DENIED.

**IT IS SO ORDERED** at Hartford, Connecticut this 9th of August, 2024.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut