UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION

| | | |
|---|---|---|
| IN RE: ) | CASE No. | 21-20111 (JJT) |
| ) | | |
|    OLD CP, INC & ) | | |
|    SURI REALTY, LLC, ) | | |
|       DEBTORS ) | CHAPTER | 11 |
| ) | | |
| OLD CP, INC. ) | | |
|    PLAINTIFF ) | ADV. PRO. No. | 23-02020 |
| V. ) | | |
| ) | | |
| NOVO ADVISORS, LLC, ) | | |
|    DEFENDANT ) | | |
| ) | | |

# MEMORANDUM OF DECISION
## GRANTING JUDGMENT ON PARTIAL FINDINGS AS TO COUNT 1

Appearances

Jeffrey M. Sklarz
Kellianne Baranowsky
Green & Sklarz, LLC
One Audubon Street
Third Floor
New Haven, CT 06511
*Counsel for Plaintiff Old CP, Inc.*

Jeffrey A. Fuisz (pro hac vice)James M. Nugent
Robert Franciscovich (pro hac vice)Harlow, Adams & Friedman, P.C.
Rebecca Maller-Stein (pro hac vice)One New Haven Avenue, Suite 100
Arnold & Porter Kaye Scholer, LLPMilford, CT 06460
250 West 55th Street*Local Counsel for Novo Advisors, LLC*
New York, NY 10019-9710
*Counsel for Novo Advisors, LLC*

On December 22, 2023, Old CP, Inc. ("Old CPI") commenced this Adversary Proceeding against Novo Advisors, LLC ("Novo"). (ECF No. 1) Old CPI alleged that it was entitled to judgment against Novo on seven (7) counts: 1) Preferential Transfer Pursuant to 11 U.S.C. §§ 547, 550, and 551; 2) Constructive Fraudulent Transfer Pursuant to 11 U.S.C. §§ 548(a)(1)(B), 550, and 551; 3) Constructive Fraudulent Transfer pursuant to the Connecticut Uniform Fraudulent Transfer Act (CUFTA), Conn. Gen. Stat. §§ 52-552e(a)(2) and 52-552f(a); 4) Breach of Fiduciary Duty as to the Pre-Petition BMO Payment; 5) Breach of Fiduciary Duty as to the Novo/CPI Engagement; 6) Breach of the Implied Covenant of Good Faith and Fair Dealing; and 7) Violation of the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. § 42-110b, et seq.

A trial was held on August 11, 2025, and continued thereafter until it concluded on August 14, 2025. On August 13, 2025, at the close of Old CPI's case in chief, Novo orally moved for Judgment on Partial Findings[1] on all counts. After deliberations, the Court granted the Motion as to Count 1 but declined to grant the Motion as to the other counts. The Court issues this conforming Memorandum of Decision solely as to Count 1.

---

[1] Although Novo's trial counsel characterized its Motion as a Motion for Directed Verdict, Motions for Judgment as a Matter of Law that are "made during bench trials are treated as motions for judgment on partial findings under Rule 52(c)." *See Miles-Hickman v. David Powers Homes, Inc.*, 613 F. Supp. 2d 872, 879 (S.D. Tex. 2009) (citing *Federal Ins. Co. v. HPSC, Inc.*, 480 F.3d 26, 32 (1st Cir. 2007); *Northeast Drilling, Inc. v. Inner Space Servs., Inc.*, 243 F.3d 25, 37 (1st Cir. 2001)); *see also Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 963 n.1 (5th Cir. 2016) (noting that "Rule 52(c) [is] the proper vehicle for rendering judgment" when a bench trial takes place). Accordingly, the Court will construe and refer to Novo's Motion as a Motion for Judgment on Partial Findings under Fed. R.Civ. P. 52(c).

1. **Findings of Fact**

**1.1 Pre-Bankruptcy Filing – Novo's Engagement with BMO**

Carla's Pasta, Inc. ("CPI") was owned and operated by Carla Squatritto and her two sons, Sergio and Sandro.[2] (MC – ECF No. 1) CPI manufactured food products at its facilities in South Windsor, Connecticut. (ECF No. 1; 8/11/25 Transcript at page 78, lines 18–22;[3] 8/12/25 Tr. 8:3–5)

BMO Harris Bank, N.A., a national banking association ("BMO"), and People's United Bank, National Association, a national banking association ("PUB"), served as CPI's "Senior Lenders." (Stip. ¶ 11) On October 4, 2017, CPI entered into the Third Amended and Restated Credit Agreement with BMO as a lender, and PUB as administrative agent, swingline lender, and letter of credit issuer. (Id.) Together, "the Senior Lenders held first priority security interest in, and lien on, substantially all of [CPI's] assets, including a first priority mortgage on all properties." (Id., ¶ 12)

In the Third Amended and Restated Credit Agreement, CPI agreed to reimburse BMO for certain expenses incurred. (Exh. D1, 133–34[4]) Specifically, Section 11.4(a) regarding costs and expenses states:

> The Loan Parties shall pay . . . all out-of-pocket expenses incurred by . . . any Lender . . . (including the fees, charges and disbursements of any counsel for the Administrative Agent, any Lender, or the L/C Issuer), and shall pay all fees and time charges for . . . any Lender or the L/C

---

[2] To the extent that any Findings of Fact stated herein are considered Conclusions of Law, they are adopted as such. To the extent any Conclusions of Law stated herein are considered Findings of Fact, they are adopted as such.
[3] Henceforth, all transcripts will be cited as: "[Date] Tr. [Page Number]: [Line Number]–[Line Number]."
[4] This exhibit was admitted on August 12, 2025, during the Plaintiff's case in chief.

> Issuer, in connection with the enforcement or protection of its rights (A) in connection with this Agreement and the other Loan Documents, including its rights under this Section, or (B) in connection with Loans made or Letters of Credit issued hereunder, including all such out-of-pocket expenses incurred during any workout, restructuring or negotiations in respect of such Loans or Letters of Credit. (Id.)

Accordingly, CPI was required to reimburse the expenses that BMO incurred in advancing its rights under the Agreement. (Id.)

By the summer of 2020, CPI was facing serious financial distress and had defaulted on its obligations to the Senior Lenders. (Stip. ¶ 13; 8/11/2025 Tr. 44:13–25) Therefore, on or about June 30, 2020, BMO's counsel, Chapman and Cutler LLP, engaged Novo on behalf of the Senior Lenders to perform a financial assessment of CPI. (Stip. ¶ 16) A letter, dated June 30, 2020, set forth the terms of the engagement and was signed by Mr. Sandeep Gupta, Novo's Managing Partner. (Id., ¶ 17; Exh. P1, 7) Novo agreed to provide the Senior Lenders with "certain financial advisory and consulting services . . . in relation to [CPI] and [Suri Realty, LLC[5]] . . . ." (Exh. P1, 2) Novo's services included reviewing CPI and Suri Realty LLC's financial performance for 2018 and 2019, performing an assessment of the companies' 2020 business plans, and determining the companies' viability and/or risks. (Id.) Since BMO hired Novo as its financial consultant to assess its rights and interest in CPI under the Third Amended and Restated Credit Agreement, CPI was required to reimburse BMO for the expenses it thereby incurred. (Id.)

Novo was situated onsite at CPI's facilities in July of 2020 to perform its financial assessment. (Stip. ¶ 19) CPI was aware that Novo was a consultant for the

---

[5] Suri Realty was an affiliate of CPI. (MC – ECF No. 2)

4

Senior Lenders and that Novo was preparing a financial examination for the Senior Lenders. (Id.) Novo completed its assessment and compiled its findings in a report. (Id., ¶ 20) For the services it performed under this engagement, Novo issued three invoices to BMO through BMO's counsel. (Id., ¶ 22–23) The invoices totaled $273,616.25 for services performed from June 12, 2020, to August 6, 2020. (Id., ¶ 23)

On January 28, 2021, CPI made two payments to BMO via wire transfer for "payments related to bankruptcy . . . ." (Id., ¶ 38–40) The first payment was for $164,169.75, and the second payment was for $109,446.50, totaling $273,616.25. (Id., ¶ 38–39) These payments will be referred to singularly as "the Pre-Petition BMO Payment." Prior to making the Pre-Petition BMO Payment, a $273,616.25 payment entry to "NOVO ADVISORS" appeared on an Accounts Payable Aging Excel Spreadsheet of CPI, dated January 9, 2021. (Exh. P12) On the day the Pre-Petition BMO Payment was made, Novo's Managing Director, Stefan Piotrowski, acted as an intermediary between CPI and BMO to help coordinate the wire transfers to BMO and then to Novo. (Exh. P27; Exh. P44) Mr. Piotrowski communicated with Jacob Emmons and Danish Khan of BMO and Claudia McCann, interim CFO of CPI, sending wire instructions and payment confirmations to facilitate the transfers. (Exh. P27)

The amount CPI paid BMO – $273,616.25 – matched the total amount that BMO still owed Novo for the services performed in the summer of 2020. (Stip. ¶ 23) Later that same day, BMO made a wire transfer to Novo for its fees of $273,616.25. (Id., ¶ 41)

**1.2 History of the Adversary Proceeding**

On December 22, 2023, Craig Jalbert, the Chapter 11 Liquidating Custodian, commenced this Adversary Proceeding against Novo. (ECF No. 1) On March 25, 2024, Novo filed a Motion to Dismiss. (ECF No. 21) Novo argued that: 1) Old CPI's claims were barred by the doctrines of judicial and equitable estoppel; 2) Old CPI affirmatively waived and released the alleged conflicts and issues underpinning its claims; and 3) Old CPI failed to state a claim under any of its asserted theories. On August 29, 2024, the Court entered its Memorandum of Decision and Ruling on Novo Advisors, LLC's Motion to Dismiss (ECF No. 38) concluding for the reasons stated therein that the granting of Novo's Motion to Dismiss was unwarranted.

On March 28, 2025, Novo filed six (6) Motions in Limine. (ECF Nos. 64, 65, 66, 67, 68, 69) On May 20, 2025, after notice and hearing, the Court entered its Omnibus Memorandum of Decision on Defendants' Motions in Limine (ECF No. 94) denying the Motions in favor of addressing the disputed evidence at trial.

**1.3 Testimony & Exhibits**

In the trial in this Adversary Proceeding, the Court admitted into evidence forty-nine (49) exhibits proposed by the Plaintiff.[6] Old CPI called as a witness:

1) Old CP, Inc., by and through Craig Jalbert in his capacity as Liquidating Custodian, who testified as a fact witness, explaining his involvement and role with

---

[6] The Plaintiff submitted a proposed list of exhibits. (ECF No. 99) The Court admitted exhibits: P1, P2, P3, P4, P5, P6, P7, P8, P9, P10 (for a limited purpose), P11, P12, P13, P14, P15, P18, P19, P20, P21, P22, P23, P25, P26, P27, P31, P32, P33, P34 (in part), P36, P40, P44, P45, P46, P48 (in part), P49, P57, P75, P76, P78, P83 (in part), P84, P86, P88, P91, P92, P93, P94, P97, and P98.

6

Old CPI, the history of the bankruptcy filing and Chapter 11 case, and his knowledge of the books and records, and operations of CPI and Old CPI;

2) Sandeep Gupta, who testified about his role at Novo, his experience working as a consultant for BMO, much of the assessment of CPI that Novo conducted while consulting for BMO, and Novo's role as CPI's financial advisor and CRO prior to its bankruptcy filing;

3) Craig Jalbert, who testified again in his capacity as an Expert Witness, and opined concerning Novo's conflicts of interest (Exh. P91) and the ostensible nature of the Pre-Petition BMO Payment; and

4) Attorney Eric Henzy, who testified about his experience serving as CPI's legal counsel until August 7, 2020, the actions he took and advice he gave relating thereto, and his experience with Novo both as BMO's consultant and as CPI's prospective financial advisor and CRO.

Additional facts material to this ruling will be addressed below as necessary.

At the close of Old CPI's case in chief, trial counsel for Novo moved for a Judgment on Partial Findings under Fed. R. Civ. P. 52(c).[7] The Court granted the Motion as to Count 1 from the bench, but declined to grant the Motion as to the other six (6) counts.

---

[7] See footnote 1 of this opinion.

## 2. Conclusions of Law

### 2.1 Jurisdiction

The United States District Court for the District of Connecticut has jurisdiction over the instant proceedings under 28 U.S.C. § 1334(b), and the Bankruptcy Court derives its authority to hear and determine this matter on reference from the District Court under 28 U.S.C. § 157(a) and (b)(1) and the General Order of Reference of the United States District Court for the District of Connecticut dated September 21, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B).

### 2.2 Preferential Transfer Pursuant to 11 U.S.C. §§ 547, 550, and 551

In Count 1, Old CPI alleges that it is entitled, pursuant to 11 U.S.C. § 547, to avoid the Pre-Petition BMO Payment. Old CPI argues that 11 U.S.C. § 547 applies because the payment was made on or within ninety (90) days of the Petition Date while CPI was insolvent, and "enabled [Novo] to receive more than it would have received" were the Debtor's case filed under Chapter 7 of the Bankruptcy Code. (Complaint ¶ 85) Old CPI argues that Novo "was the initial transferee of the transfer(s) or the immediate or mediate transferee of such initial transferee or the person for whose benefit for all the [Pre-Petition BMO Payment] was made." (Id., ¶ 86) Old CPI asserts essentially that BMO was actually a mere conduit, while Novo is the real initial transferee under 11 U.S.C. § 550. (8/13/25 Tr. 112:22–113:12)

In response, Novo asserts that BMO constitutes the initial transferee under 11 U.S.C. § 550. Alternatively, Novo argues that even if BMO was not an initial

transferee, no antecedent debt was owed to Novo as 11 U.S.C. § 547 requires. After consideration of the pleadings, the law, and the facts herein, the Court concludes that key elements of 11 U.S.C. § 547 have not been satisfied.

Old CPI's argument relies on the equitable characterization of BMO as a mere conduit, such that the transfer at issue was one from CPI to Novo, the real initial transferee. The mere conduit doctrine "is based on the premise that the conduit did not have dominion or control over the transferred property and cannot or should not be deemed a 'transferee.'" *In re USA United Fleet, Inc.*, 559 B.R. at 64 (citing *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 15 n.6 (Bankr. E.D.N.Y. 2007); *Secs. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 313 (Bankr. S.D.N.Y. 1999)). "[A]n initial transferee [under 11 U.S.C. § 550] has dominion and control over the *res* of the initial transfer, whereas a conduit has but a fleeting possessory interest therein." *Stratton Oakmont*, 234 B.R. at 313.

The Second Circuit applies the "dominion and control" test to determine whether an entity constitutes an initial transferee, rather than a mere conduit. *See In re* Affinity Health Care, Management, Inc., 499 B.R. 246, 261 (Bankr. D. Conn. 2013) (citing *Christy v. Alexander & Alexander (In re* Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey), 130 F.3d 52, 57–58 (2d Cir.1997); *Tese–Milner v. Brune (In re* Red Dot Scenic, Inc.), 293 B.R. 116, 119 (S.D.N.Y.2003)). "The entity must exercise dominion over the transferred assets, or have the right to use the assets for its own purposes." *Id.* (citing *In re* Finley, 130 F.3d at 57–58).

9

Counter to Old CPI's view, the evidence demonstrates that BMO clearly constitutes the initial transferee under 11 U.S.C. § 550 rather than a mere conduit. BMO enjoyed an absolute legal entitlement, as the Debtor's obligee, to the transferred funds pursuant to the loan documents and the Eighth Forbearance Agreement. BMO thereby also had the absolute right to deploy the payment to the fees and expenses it incurred for Novo's services under these documents.

Old CPI emphasizes four key facts to dispute this contention: 1) the closeness in time of the Pre-Petition BMO Payment and the subsequent payment from BMO to Novo; 2) the equivalence of the Pre-Petition BMO Payment and the subsequent payment from BMO to Novo; 3) the inclusion of a $273,616.25 payment entry to Novo on CPI's Accounts Payable Aging Spreadsheet; and 4) the supervision and facilitation of the payments from CPI to BMO to Novo by Novo's employee.[8] The Court concludes that these facts are not determinative in light of the indisputable contract rights that BMO had to these payments and the stark absence of any written or express accord by CPI to pay Novo.

### 3. Conclusion

For the foregoing reasons, the Court grants the Motion for a Judgment on Partial Findings under Fed. R. Civ. P. 52(c) for the Defendant as to Count 1. A separate final judgment consistent with this Memorandum of Decision will enter

---

[8] The Plaintiff specifically refers to the assistance that Novo's employee, Mr. Stefan Piotrowski, provided to CPI and BMO in sharing the wire information and confirmations to help coordinate the transfers.

upon the docket with the Court's issuance of its Memorandum of Decision on the remaining counts of the Complaint in this Adversary Proceeding.

    IT IS SO ORDERED at Hartford, Connecticut this 17th day of September 2025.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut